IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 15-416 |
| RAYMOND JUSTIS | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                    **JULY 29, 2020**

Raymond Justis seeks a compassionate release from his 168-month prison sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 72, 73).  He argues that his underlying medical conditions—asthma, high blood pressure, high cholesterol, and cardiac artery disease—place him at a high risk of illness or death in light of the current global pandemic of COVID-19.  For the reasons that follow, Justis's Motion will be denied.

**I.      BACKGROUND**

In March of 2016, Justis entered a plea of guilty to one count of sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(b)(2) and 1594(a).  (ECF No. 60.)  The facts surrounding the charge are disturbing.  In early 2015, Justis operated a prostitution venture in Philadelphia where he would recruit young females to engage in prostitution for his own financial gain.  (Indictment ¶¶ 1-2.)  In March of 2015, Justis recruited a 16-year old girl ("Minor 1") to engage in prostitution.  (Presentence Report ("PSR") 4 (on file with Court); *see also* Sentencing Hr'g Tr. 3 (adopting facts from PSR), ECF No. 63.)  Justis and Minor 1 met through the prostitution website www.backpage.com, on which Justis had posted advertisements offering women to make money as female escorts.  (PSR 3.)  Justis requested nude photographs of Minor 1, and she provided them.  (*Id.*)  He picked her up at her home in Rhode Island and drove her to a

motel in New Jersey where she engaged in sex acts with nine men over the course of two weeks. (*Id.*) Justis received about half of the proceeds. (*Id.*) Minor 1 told law enforcement that she also engaged in sex acts with Justis. (*Id.*) Minor 1 told Justis that she was only 16 years old. (*Id.*) At the time, Justis was 43 years old. (*Id.*)

On October 21, 2016, Justis was sentenced to 168 months' imprisonment, five years of supervised release, and $1,300 in restitution. (ECF No. 59.) He faced a mandatory minimum sentence of 120 months' imprisonment and a guideline range of 168 to 210 months. (PSR 15; Sentencing Hr.'g Tr. 19.)

Justis is 48-years old. He has served approximately 59 months (or 35%) of his 168-month sentence. He is currently housed at FCI Cumberland in Maryland. Justis requests that the Court reduce his sentence to time served, or in the alternative, modify his term of supervised release to include home confinement for the duration of the time remaining on his original term of imprisonment. He argues that extraordinary and compelling reasons justify his release because his medical conditions place him at a high risk of serious illness or death if he were to contract COVID-19. Justis also argues that release is warranted because he is not a danger to the community, is a model inmate, and presents a low risk of recidivism. The Government opposes Justis's Motion. (ECF No. 75.)

## II.     DISCUSSION

### A.     Applicable Law

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment on the defendant's motion after the defendant has exhausted his administrative remedies. In relevant part, § 3582(c)(1) provides that a court:

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved

portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    (i) extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[1]

The phrase "extraordinary and compelling reasons" is not defined by the statute, but instead incorporates the commentary to the policy statement contained in § 1B1.13 of the United States Sentencing Guidelines. *See United States v. Handerhan*, 789 F. App'x 924, 925 (3d Cir. 2019) (citing *United States v. Barberena*, 694 F.3d 514, 521 n.10 (3d Cir. 2012). Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

[A]fter considering the factors set forth in 18 U.S.C. § 3553(a), that—

    (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
    (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
    (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

---

[1] To exhaust administrative requirements, the statute requires that a defendant first "request" that the BOP file a motion with the court for compassionate release on his behalf. Only after the defendant has exhausted the administrative rights to appeal the BOP's denial of that request, or after 30 days has passed, whichever is earlier, may the defendant then file his own motion with the court. 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (stating that remand of request for compassionate release to district court for substantive review in light of COVID-19 pandemic would be "futile" because the defendant had not complied with the exhaustion requirements under Section 3582). Justis has complied with the exhaustion requirements of § 3582(c)(1)(A). On May 20, 2020, Justis filed a formal request to the Warden at FCI Cumberland for compassionate release due to the COVID-19 pandemic. (Cumberland Denial, Am. Mot. Ex. 1, ECF No. 72.) On June 2, 2020, his request was denied. (*Id.*)

Application Note 1 to § 1B1.13 provides four categories of reasons that qualify as extraordinary and compelling:  (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; or (4) "other reasons" to be determined by the Director of the BOP.  As a result of amendments to § 3582(c)(1)(A) by the First Step Act, courts now conclude that the catch-all category of "other reasons" applies not only to the BOP Director, but also to courts.  *See United States v. Towel*, No. 17-519-6, 2020 WL 2992528, at *3 (E.D. Pa. June 4, 2020); *United States v. Rodriguez*, No. 03-271, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (noting that the Sentencing Commission's "old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)").

A legal standard for reviewing compassionate release requests in the context of the COVID-19 pandemic may be distilled from a synthesis of the statute, the Sentencing Guidelines, and recent court decisions.  Courts faced with motions for compassionate release in light of COVID-19 consider: (1) whether "extraordinary and compelling" reasons exist to reduce the defendant's sentence; (2) whether the defendant is a danger to the community under § 3142(g); and (3) whether the § 3553(a) sentencing factors support a sentence reduction.  *See United States v. Pabon*, -- F. Supp. 3d --, No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020); *United States v. Mathe*, No. 14-528, 2020 WL 3542177, at *3 (E.D. Pa. June 30, 2020); *United States v. Hannigan*, No. 19-373, 2020 WL 4015238, at *3 (E.D. Pa. July 16, 2020).

To establish "extraordinary and compelling reasons," courts have generally required defendants to show two things:  (1) advanced age or a serious medical condition that places them at a high risk of serious complications or death if infected with COVID-19; and (2) a more than mere speculative risk of exposure to the virus at the prison where the inmate is housed.  *United*

*States v. Somerville*, -- F. Supp. 3d --, No. 12-225, 2020 WL 2781585, at *8 (W.D. Pa. May 29, 2020) (citing cases).

      **B.**      **Extraordinary and Compelling Reasons**

Justis alleges a number of underlying medical conditions, including asthma, high blood pressure, high cholesterol, and cardiac artery disease. In 2013, Justis suffered a heart attack that required the placement of a stent. (PSR 12.) As stated in his PSR, Justis was taking numerous medications for his heart condition, high blood pressure, and asthma prior to being incarcerated. (*Id*.) The CDC recognizes that individuals with serious heart conditions are at a greater risk of serious complications or death from COVID-19, and that individuals with hypertension and asthma "might be at an increased risk" for severe illness from COVID-19.[2] As stated in its compassionate release denial, FCI Cumberland places Justis in the medical category "Care 2 (Stable, Chronic Care)," meaning that he is "able to function in the correctional settings." (Cumberland Denial.) In fact, in a May 22, 2020 message to the prison health services where he requested permission to return to his job at the prison, Justis stated that he has "no complications with health issues." (Mot. Ex. 2, ECF No. 73.) Nevertheless, even if his health conditions are under control in the prison setting, they still make him more vulnerable to serious complications from COVID-19 if he were to contract it. However, our inquiry does not end here.

Even assuming Justis's health conditions place him at an increased risk of serious illness, Justis is not entitled to a compassionate release under the First Step Act. Justis has not

---

[2] *See People of Any Age with Underlying Medical Conditions*, Centers for Disease Control and Prevention (accessed July 28, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC recognizes numerous other conditions as creating a greater risk of serious illness. We mention only those relevant to Justis's case.

demonstrated a more than mere speculative risk of exposure to COVID-19 at FCI Cumberland. As of the date of this Memorandum, FCI Cumberland has no confirmed cases of COVID-19 among the inmate population and only two confirmed cases among the prison staff. *See* https://www.bop.gov/coronavirus/ (accessed July 29, 2020). The BOP has instituted strict protocols at its prisons, including at FCI Cumberland, to prevent the spread of COVID-19. Such measures include quarantining new inmates, suspending legal and social visitation, limiting inmate movement, and screening individuals who enter the prison.[3]

In light of his underlying medical conditions, we understand Justis's concerns about the spread of COVID-19 within the prison system. However, with only two cases reported at FCI Cumberland, "generalized COVID-19 fears and speculation" are insufficient to warrant release. *United States v. Upshur*, No. 18-124-2, 2020 WL 3128026, at *2 (E.D. Pa. June 12, 2020). The Third Circuit has cautioned that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597. When a prison is able to keep the number of positive COVID-19 cases low, as is the case at FCI Cumberland, the risk of exposure is too speculative to render the circumstances extraordinary and compelling. *See, e.g.*, *United States v. Gold*, No. 15-330, 2020 WL 2197839, at *2 (N.D. Ill. May 6, 2020) (explaining that courts routinely deny "motions brought by inmates housed in facilities with no evidence of widespread transmission") (citations omitted); *United States v. Shulick*, No. 16-428, 2020 WL 3250584, at *4 (E.D. Pa. June 16, 2020) (denying request for compassionate release because, *inter alia*, only

---

[3] *See BOP Implementing Modified Operations*, Bureau of Prisons, (accessed July 28, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp

one case of COVID-19 had been reported in a staff member at the prison). Justis has failed to show extraordinary and compelling reasons justifying his release.

### C.     Danger to the Community and Sentencing Factors under § 3553(a)

In addition to considering whether extraordinary and compelling reasons justify the release, we must also consider whether Justis is a danger to the community under § 3142(g), and whether the § 3553(a) sentencing factors support a sentence reduction. *See* U.S.S.G. § 1B1.13.

Section 3142(g) sets out the factors that courts must consider in deciding whether to release a defendant pending trial. The factors relevant to whether the defendant poses a danger to the community include: "the nature and circumstances of the offense," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1), (3), (4).

These factors weigh against Justis's release. The crime itself is reprehensible. Justis recruited a young naïve minor into prostitution and repeatedly sold her body to men for his own financial gain. He was able to accomplish this by secluding her in a motel room far away from her home. Minor 1 will undoubtedly carry the psychological and emotional scars from this crime throughout the remainder of her life. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses." *United States v. Jackson*, No. 13-279, 2020 WL 3832717, at *2 (E.D. La. July 8, 2020) (concluding in sex trafficking case that the § 3142(g) factors weighed against compassionate release) (citation and internal quotation marks omitted). Courts have been reluctant to grant compassionate release requests to individuals convicted of crimes involving sex trafficking or minors. *See, e.g.*, *id.*; *United States v. Francisco*, No. 19-131, 2020 WL 3507958, at *2-3 (S.D.N.Y. June 29, 2020); *United States v. Pollard*, No. 13-20887, 2020 WL 3287976, at *2-3 (E.D. Mich. June 18, 2020); *United States v. Pemberton*, No. 16-275,

2020 WL 3452227, at *2 (M.D. Fla. June 24, 2020) (stating that the court is "unconvinced" that the defendant "would not pose a danger to the public" after admitting to recruiting "multiple underage girls to engage in acts of prostitution").

Justis's criminal history, although not extensive, concerned the Court at his sentencing and still concerns us now.  (*See* Sentencing Tr. 19-20.)  Justis has a 2014 assault conviction and related restraining order for punching his autistic son, who was 10-years old at the time.  (PSR 7.)  In addition, Justis was arrested in 2014 for stalking an 18-year old girl.  (*Id*. at 8.)  Based upon the nature of the crime and upon Justis's criminal history, Justis continues to pose a danger to the public.

Our consideration of the § 3553(a) sentencing factors further confirms our conclusion that granting Justis a compassionate release is not appropriate.[4]  As we noted above, the nature and circumstances of the crime are awful.  *See* 18 U.S.C. § 3553(a)(1).  Despite Justis's acceptance of responsibility, the Court was not inclined to vary downwards from the sentencing

---

[4] The sentencing factors that courts consider when imposing a sentence under § 3553(a) include:
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>> . . .

18 U.S.C. § 3553(a).

guidelines due to the "horrendous" nature of the crime.  (Sentencing Hr.'g Tr. 19-20.)  The sentence imposed of 168 months reflects the very serious nature of child sex trafficking offenses and serves to deter others who may engage in similar conduct.  *See id*. at § 3553(a)(2).  Finally, Justis has only served about one-third of his sentence.  Granting him a release now would further undermine the need for the sentence to reflect the "seriousness of the offense," "respect of the law," and "adequate deterrence."  *See id*. at §§ 3553(a)(2)(A) and (B); *see also United States v. Bogdanoff*, No. 12-0190-1, 2020 WL 2307315, at *5 (E.D. Pa. May 8, 2020) ("Reducing a sentence by almost two-thirds could also have an impact on the public's respect for the law and deterrence."); *Pemberton*, 2020 WL 3452227, at *2 (concluding that serving 3 years of a 21-year sentence for sex trafficking of a minor "would not serve the purposes of Section 3553(a) and would, in fact, fail to rehabilitate Pemberton or deter future violations").  Accordingly, Justis is not entitled to a compassionate release.

### III.     CONCLUSION

For the foregoing reasons, Justis's Motion for a Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) will be denied.

An appropriate order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**