## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 2:15-cr-00416 |
| | : | |
| RAYMOND JUSTIS | : | |
| | : | |

### MEMORANDUM

Presently before the Court is Raymond Justis's (Defendant) *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Motion) (Dkt. 71).[1]  The Motion advances fifteen claims of ineffective assistance of counsel.  For the reasons that follow, Defendant's Motion is denied, as it is without merit.

### I. BACKGROUND

On March 31, 2016, Defendant entered an open guilty plea to the single count of his indictment, sex trafficking of a minor, in violation of 18 U.S.C. § 1591.  *See* Minute Entry for Change of Plea (Dkt. 49); Indictment (Dkt. 8).  At the guilty plea hearing, the Government gave the following factual basis for the plea:

> If this case were to go to trial the government would prove beyond a reasonable doubt the following facts:  Between, on, or about, March 1st, 2015 and on, or about, March 31st, 2015, the defendant in the Eastern District of Pennsylvania and elsewhere in or affecting interstate commerce knowingly recruited, enticed, harbored, transported, provide[d], maintained or obtained Minor 1.  Or benefitted financially from a venture that did such an act knowing or in reckless disregard of the fact that she was under the age of 18 and would be caused to engage

---

[1]    This Motion was filed on June 4, 2020, but was not transferred to the undersigned until November 6, 2025.  *See* Order (Dkt. 135).

in a commercial sex act.  In so doing, the defendant has had a reasonable opportunity to observe her.

To prove these facts at trial the government would offer the following evidence. The government would offer the testimony of the victim.  She would testify that the defendant utilized the alias "Jordan" to recruit her over the internet to work as a prostitute. That he drove from Philadelphia, Pennsylvania to Rhode Island to obtain her, and that he transported her from Rhode Island ultimately to the Bel Air Motor Lodge in Maple Shade, New Jersey for the purposes of prostitution.  She would testify that he caused advertisements to be posted for her on an internet website called Backpage.com, and that the advertisements included her actual photographs and the defendant's phone number … for persons to call or text for a [] "date."  She would testify that at the New Jersey motel, she engaged in vaginal and oral sex in exchange for money and that she gave a portion of her earnings to the defendant.  She would also testify that the defendant drove her to other locations such as another hotel and to a residence in the greater Philadelphia, Pennsylvania area to engage in prostitution.

The certified birth certificate of the minor who was 16 at the time and is currently still a minor would be offered into evidence.   The government also would offer the testimony of other eye witnesses who observed the minor at the Bel Air motel.  In addition, the government would offer business records in the form of a Backpage recruitment advertisement posted by the defendant on February 28, 2015 utilizing the alias Jordan and his phone number ….  Business records from Backpage.com would reflect that the internet protocol address used to post this advertisement was a number ending in 99 and the Backpage customer email address provided was [*****]@gmail.com.   Business records from Verizon would establish that the posting IP address ending in 99 was assigned to the defendant's home address in Philadelphia, Pennsylvania.

The government also would offer the Backpage advertisement for the minor during the time period set forth in the indictment indicating that interested customers should contact the defendant's phone number …. The government would also offer records from Cricket reflecting that the phone number … was subscribed to by the defendant at his home address.  The government would offer business records from the Bel Air Motor Lodge reflecting that from March 14 through 18, 2015 the defendant reserved a room utilizing his real name.

> In addition, the government would offer into evidence items seized from the defendant's residence pursuant to a search warrant on July 22nd, 2015 and from the defendant's pockets at the time of his arrest which included credit cards used to post the aforementioned Backpage advertisements and documents reflecting the defendant's use of the email address that was used to post the Backpage recruitment advertisement. Finally, the defendant's own Mirandized statement to FBI agents on July 22nd, 2015 in which he admitted to transporting the person identified as Minor 1 for purposes of prostitution would be offered into evidence.

*See* Transcript of Guilty Plea, 3/31/2026, at 22–25 (Dkt. 62) (paragraph breaks added). Immediately before the Government read the factual basis into the record, Defendant's attorney explained Defendant "has always had some issues with his statement, whether or not it was obtained voluntarily and through Miranda[,]" but further explained Defendant also understood that "even if the statement was suppressed for some reason that all of the other factual—all the other evidence set forth on the government's factual basis would still be presented at trial." *Id.* at 21. Defendant's counsel then asked him, "So, overall do you accept the government's factual recitation as it's set forth in [the change of plea memorandum]?" *Id.* at 21–22. Defendant replied, "Yes." *Id.* at 22.

> The Court then clarified:

> You're saying that the—you feel that you could conceivably have an issue to—with the statement that was made. You could file a motion to suppress but you are giving up and waiving your right to do that because you want to plead guilty and because the facts in the plea memorandum which the government is going to recite to me in a few minutes, are accurate and support the fact that you committed this crime?

*Id.* Defendant again replied, "Yes." *Id.*

3

After the Government gave the preceding factual basis, the following exchange occurred between Defendant and the Court:

Q.  All right.  Mr. Justis, you heard what the Assistant United States Attorney just said with regard to the facts of this case.

A.  Yes, sir.

Q.  Do you understand that you are admitting those facts?

A.  Yes.

Q.  Do you admit those facts?

A.  Yes.

Q.  You understand that if you did the things that you just admitted, you're in fact guilty of this charge?

A.  Yes.

*Id.* at 25.  Following a colloquy, the Court stated, "I'm satisfied that this plea is voluntarily and intelligently entered.  I'm satisfied that there is a factual basis for it and I will accept it." *Id.* at 26.

Relevant to the instant Motion, the Court also colloquied Defendant regarding his satisfaction with his counsel, Mr. Brennan:

THE COURT:  Now, the first thing I'm going to talk about is your representation by Mr. Brennan.  Okay?

MR. JUSTIS:  Okay.

THE COURT:  And I'm going to talk to you about that, Mr. Justis, because Mr. Brennan is the third attorney to represent you.

MR. JUSTIS:  Yes.

THE COURT:  Okay?  And you made motions—or you made at least one motion before to have counsel dismissed.

MR. JUSTIS:  Yes.

THE COURT:  You contended that that attorney wanted you to plead guilty and you didn't want to plead guilty because you were innocent. And you contended that that attorney did not want to file motions to suppress evidence, did not want to file a motion to dismiss the indictment—

MR. JUSTIS:  Yes.

THE COURT:  —and you were dissatisfied with that attorney's representations, is that correct?

MR. JUSTIS:  Yes.

THE COURT:  Essentially you were saying to me that that attorney was ineffective and was not representing you properly.

MR. JUSTIS:  Correct.

THE COURT:  Now, I appointed Mr. Brennan to represent you back on February 9th, I believe it was.  Have you had a chance to sit down with Mr. Brennan and talk to him about this case?

MR. JUSTIS:  Yes.

THE COURT:  Have you had a chance to discuss this matter with him in detail?

MR. JUSTIS:  Yes.

THE COURT:  Are you satisfied with the representation you are getting from Mr. Brennan?

MR. JUSTIS:  Yes, I am.

THE COURT:  Are you satisfied that he is effectively representing you?

MR. JUSTIS:  Yes.

THE COURT:  You understand, Mr. Justis, that I'm asking these questions because you've already indicated that prior attorneys were not

effective and I don't want you coming back later on saying that Mr. Brennan is ineffective. You understand that?

MR. JUSTIS:  Yes, sir.

THE COURT:  So I'm giving you the opportunity now to say anything that you feel you want to tell me with regard to the representation you're getting.

MR. JUSTIS:  I understand.  You know, representation is good.  You know I talked to him on a faster basis.

THE COURT:  You're satisfied then that if you wanted to go to trial, he could properly represent you?

MR. JUSTIS:  Yes.

THE COURT:  And you're satisfied that the advice that you have gotten from him is good advice?

MR. JUSTIS:  Yes.

*Id.* at 5–7.  Defendant's counsel also asked Defendant the following questions on the

record, again confirming Defendant's satisfaction with his representation:

MR. BRENNAN:  And one of the things [the Court] asked you is one of your other lawyers you said, you know, you had a problem with them not filing motions, we have discussed the merits or lack thereof of proceeding to trial and you have instructed me to notify the court and the government you wish to plead guilty, correct?

MR. JUSTIS:  Yes.

MR. BRENNAN:  And not to file any motions, correct?

MR. JUSTIS:  Yes.

MR. BRENNAN:  All right.  Do you have any questions of me?

MR. JUSTIS:  No.

MR. BRENNAN:  All right, and have I performed to your satisfaction as your lawyer?

6

MR. JUSTIS: Yes.

*Id.* at 11.

On October 21, 2016, Defendant was sentenced to 168 months' imprisonment. *See* Judgement in a Criminal Case at 2 (Dkt. 60). This was at the bottom of the range calculated under the guidelines. *See* Transcript of Sentencing, 10/21/2016, at 3 (Dkt. 63) ("The presentence report calculates the sentencing guidelines to be 168–210 months.").

Defendant appealed, and the Third Circuit affirmed Defendant's judgment of sentence. *See United States v. Doe*, 785 F. App'x 57, 64 (3d Cir. 2019). On June 4, 2020, Defendant timely filed this Motion pursuant to 28 U.S.C. § 2255.

## II. ANALYSIS

The Motion sets forth fifteen grounds of ineffective assistance of counsel.[2] To prevail on an ineffectiveness claim, a defendant must satisfy the two-part test outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The first part of the test requires a defendant to "show that counsel's performance was deficient." *Ellison v. United States*, 120 F.4th 338, 343 (3d Cir. 2024) (footnote omitted) (citing *Strickland*, 466 U.S. at 687). The second part of the test requires a defendant to "show that the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 687). Because prejudice is required "there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a

---

[2] "In all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.

meritless argument." *United States v. Bui*, 795 F.3d 363, 366–67 (3d Cir. 2015) (citation omitted). As this Court now explains, none of Defendant's ineffectiveness claims entitle him to relief under this standard.

**Ground One**

First, Defendant alleges his counsel was ineffective for failing to challenge a sentencing enhancement imposed under Section 2G1.3(b)(1) of the U.S. Sentencing Commission Guidelines Manual.[3] *See* Motion at 6. According to Defendant, the enhancement was inapplicable because he "was not a parent, relative, or legal guardian[,]" nor was he "entrusted the 'minor' in any sort of temporary capacity[.]" *Id.*

The Federal Sentencing Guidelines Manual gives commentary concerning the application of Section 2G1.3(b)(1). The Guidelines explain the provision should not be construed in an overly rigid way:

> Subsection (b)(1) is **intended to have broad application** and includes offenses involving a victim less than 18 years of age entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this enhancement, **the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship**.

2014 Federal Sentencing Guidelines Manual § 2G1.3(b)(1), Commentary 2.(A) (emphases added).

---

[3] "If (A) the defendant was a parent, relative, or legal guardian of the minor; or (B) the minor was otherwise in the custody, care, or supervisory control of the defendant, increase by 2 levels." 2014 Federal Sentencing Guidelines Manual § 2G1.3(b)(1).

Here, Defendant recruited the victim, picked her up in Rhode Island, maintained her in a motel in New Jersey, advertised her for purposes of prostitution, took a portion of her earnings, and transported her to other locations to engage in prostitution. Defendant's conduct was within the broad scope of Section 2G1.3(b)(1). Because the challenge would have been meritless, counsel cannot be ineffective for failing to raise it. *See Bui*, 795 F.3d at 366–67.

Even if Defendant's counsel could have made a plausible argument that Section 2G1.3(b)(1) did not apply, this claim would still be untenable. That is because counsel made a reasonable strategic decision to leave the issue uncontested. In the context of ineffectiveness claims, "it is critical that courts be 'highly deferential' to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight" reasoning. *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) (citing *Strickland*, 466 U.S. at 689).

At the sentencing hearing, Defendant's counsel emphasized that Defendant was not challenging this sentencing enhancement. Counsel argued this demonstrated Defendant's acceptance of responsibility and potential for rehabilitation:

> [W]ith regard to the 2G1.3(b)(1)(b) enhancement, … in determining whether to apply this enhancement, the court should look to the actual relationship that existed between the defendant and the minor, not simply to the legal status of the defendant-minor relationship. That to some defendants, at least in my years of experience, that is almost an invitation to come in and whine and nit pick, neither of which [Defendant] has done. And I think if the court looks at the issues that I'm raising in kind of a totality of circumstances manner, it shows that [Defendant] admitted what he did, accepted responsibility, stands here today and is—has remorse for his actions and has potential—more

9

potential than most, I think, especially in this particular offense, for rehabilitation.

Transcript of Sentencing, 10/21/2016, at 6.  In sum, counsel made a reasonable strategic choice to leave this enhancement unchallenged.  This choice served as a basis for counsel's plea for leniency.  Accordingly, this claim is without merit.

**Ground Two**

Next, Defendant asserts the "District Court diagnosed [him] with mental health and psycho-sexual disorders … and ordered, as a special condition of supervised release, that he participate in a psycho-sexual and mental health program[.]" Motion at 7–8.  Defendant contends that his counsel was ineffective for failing to object.

Defendant has already raised this issue on direct appeal, arguing "the District Court improperly diagnosed him with mental health problems, and based his sentence on 'unsubstantiated concerns' about his mental health." *Doe*, 785 F. App'x at 62.    Therefore, counsel raised this issue, notwithstanding Defendant's representations to the contrary.  Moreover, the Third Circuit held this claim was without merit.  *See id.* at 62–63.  Thus, even if counsel had not raised the issue on direct appeal, he could not be ineffective for failing to raise the meritless claim.

Although this is framed as an ineffectiveness claim, it seems Defendant is merely attempting to relitigate the issue in his habeas petition.  However, "[a]s a general rule, we do not allow claims not raised at trial or on direct appeal to be raised on collateral review." *United States v. De Castro*, 49 F.4th 836, 847 (3d Cir. 2022)

10

(citation and quotation marks omitted). Accordingly, Defendant is not entitled to relief on this ground.

**Ground Three**

Next, Defendant alleges his counsel was ineffective for failing to object to a release condition restricting Defendant's contact with children. *See* Motion at 9. According to Defendant, he would "be banned from being around family members, grandkids, etc. and he would not be able to gain employment because people under the age of 18 would be working, customers would be entering/exiting [Defendant's] place of employment[.]" *Id.* Defendant also avers he "would not be allowed to attend sporting events, social gatherings, etc." and argues his "freedom, liberty, and movement would be completely stripped under this stipulation." *Id.*

Preliminarily, Defendant's characterization of the conditions is not entirely accurate. The additional supervised release terms provide that Defendant "shall report to the U.S. Probation Office any regular contact with children of either sex under the age of 18" and that he "shall not obtain employment or perform volunteer work which includes regular contact with children under the age of 18." Judgement in a Criminal Case at 5 (Dkt. 60). Thus, the conditions do not entirely prohibit contact with children (including family), but instead impose reporting requirements. He would also be allowed "to attend public gatherings such as sporting events, because those are not regularly occurring." Government's Response in Opposition at 13 (Dkt. 98).

11

For special conditions of supervised release to be lawful, they must be "reasonably related to the factors" set forth in 18 U.S.C. § 3553(a) (such as the nature of the offense and the characteristics of the defendant), and they must involve "no greater deprivation of liberty than is reasonably necessary" to promote deterrence, protection of the public, and rehabilitation of the defendant. 18 U.S.C. § 3583(d)(1)–(2).

In *United States v. Clayton*, the defendant "admitted to posting advertisements on the internet for sexual services of minors and transporting and harboring two minors under the age of 18 for the purpose of causing them to engage in commercial sex acts." No. 18-CR-524, 2026 WL 777064, at *6 (E.D. Pa. Mar. 18, 2026) (Kenney, J.). The sentencing court imposed the same condition at issue here: "Defendant shall report to the U.S. Probation Office any regular contact that he has with children of either sex under the age of 18. Defendant shall not obtain employment or perform volunteer work which includes regular contact with children under the age of 18." *Id.* at *5 (citation omitted). The habeas court concluded the conditions "relate[d] directly to his convicted offenses and [were] reasonable and appropriate." *Id.* at *6. Other courts have approved even stricter restrictions. *See, e.g., United States v. Maurer*, 639 F.3d 72, 82–86 (3d Cir. 2011) (upholding a condition prohibiting the defendant from contact with minors without the approval of the U.S. Probation Office following a conviction for possession of child pornography); *United States v. Telles*, 755 F. App'x 103, 106 (3d Cir. 2018) (collecting cases upholding conditions barring defendants from places minors frequent); *United States v. Hill*, 959 F. Supp. 2d 158, 164–66 (D.D.C.

12

2013) (upholding a "no contact with children" condition following a drug-related conviction because the defendant had a previous attempted child sexual abuse conviction).

If the conditions were totally unrelated to the underlying offense, it would present a problem. *See United States v. King*, 661 F. App'x 150, 152–55 (3d Cir. 2016).[4] Here, in contrast, the offense involved a minor, thus providing a reasonable relation to the conditions. Additionally, although the sentencing court did not specifically address the condition limiting contact with minors, a review of the transcript reveals that the court considered the appropriate factors. *See* Transcript of Sentencing, 10/21/2016, at 19–22. This, coupled with the conditions' clear relation to the crimes, suggests any objection to the conditions would have been unsuccessful. Because Defendant cannot demonstrate he was prejudiced by counsel's failure to object, his ineffectiveness claim does not entitle him to relief.

**Ground Four**

Next, Defendant claims the Government's case was "solely based on the terms of advertisement(s), advertised ads, and so forth to recruit, transport, etc. the alle[]ged victim." Motion at 10. Yet Defendant maintains "the words and terms of advertisement, etc. did not exist [in the statute] at the time of this alle[]ged violation." *Id.* He asserts those terms were added to the statute approximately two months after

---

[4]   In *King*, the Third Circuit panel vacated release conditions that were identical to the conditions at issue here because "the conditions that restricted [the defendant's] interaction with minors [were] not reasonably related to the nature and circumstances of" his conviction for sex trafficking. *Id.* at 155. The panel stressed that the record was "devoid of any explanation or justification for the imposition of the special conditions related to minors." *Id.*

the offense, and he therefore did not have notice that advertisements violated the statute. *See id.* By failing to object to this, Defendant argues his counsel provided ineffective representation.

As Defendant observes, the statute in question at the time of his offense in March 2015 read:

> **(a)** Whoever knowingly--
>
>> **(1)** in or affecting interstate or foreign commerce … **recruits, entices, harbors, transports, provides, obtains, or maintains** by any means a person; or
>>
>> **(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591 (effective December 23, 2008, to May 28, 2015) (emphasis added).

However, at the time of his guilty plea in March 2016, the word "advertise" appeared in the statute:

> **(a)** Whoever knowingly--
>
>> **(1)** in or affecting interstate or foreign commerce … recruits, entices, harbors, transports, provides, obtains, **advertises,** maintains, **patronizes, or solicits** by any means a person …

18 U.S.C. § 1591 (amended Pub.L. 114-22, Title I, §§ 108(a), 118(b), May 29, 2015, 129 Stat. 238, 247) (emphases added).

Despite this change in the statutory language, Defendant's claim lacks merit. The words "recruits, entices, harbors, transports, provides, obtains, **or** maintains" are set apart by the word "or," meaning that the statute lays out alternative means of satisfying an element of the crime. *See Mathis v. United States*, 579 U.S. 500, 506 (2016) (a statute requiring "use of a 'deadly weapon' as an element of a crime and further provid[ing] that the use of a 'knife, gun, bat, or similar weapon' would all qualify … merely specifies diverse means of satisfying a single element"). Therefore, the Government would not be required to prove Defendant published advertisements under either version of the statute. Other means—such as recruiting, enticing, transporting, or providing—would suffice to satisfy that element of the crime. Because the Government's factual basis for the plea included evidence of those actions, any objection based on the absence of the word "advertises" would have been without merit. Therefore, counsel's failure to raise that argument did not prejudice Defendant, and his ineffectiveness claim cannot succeed.

### **<u>Ground Five</u>**

Next, Defendant avers his counsel was ineffective for failing to object to a search of his vehicle and cell phone. *See* Motion at 12. Yet the factual basis for the Governments plea did not include any information from the search of the vehicle or the cell phone. *See* Transcript of Guilty Plea, 3/31/2026, at 22–25. Therefore, suppression would not have benefited Defendant, and he was not prejudiced by counsel's decision not to argue that point. The ineffectiveness claim is consequently meritless.

**Ground Six**

Next, Defendant observes that the "Government states that th[e] 'minor' answered an ad that was placed on an [a]dult website[,]" and that website "has a Disclaimer and Terms of Use that everyone must comply with.  By clicking on agree, she acknowledged that she was at least 18 years old[.]"  Motion at 13–14.  Defendant insists the "disclaimer protects [him] as well, he took reasonable measures [ ] in good faith to restrict access to minors."  *Id.* at 14.  Defendant contends his counsel's failure to make this argument constituted ineffective assistance.

As detailed above, Defendant knowingly, intelligently, and voluntarily pleaded guilty, thereby admitting the factual basis for the plea was sufficient.  He also unambiguously expressed satisfaction with counsel.  Now he claims his counsel should have argued the factual basis was insufficient.

Defendant's theory is unavailing for at least two reasons.  First, the factual basis was sufficient to establish Defendant at least acted "in reckless disregard of the fact … that the [victim] ha[d] not attained the age of 18 years and [would] be caused to engage in a commercial sex act[.]"  18 U.S.C. § 1591(a).  Accordingly, counsel cannot be ineffective for failing to advance a meritless argument.

Second, "when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Lee v. United States*, 582 U.S. 357, 364–65 (2017).  Defendant cannot make that showing

here. The acceptance of responsibility was a reasonable strategic choice designed to secure a more lenient sentence. *See* Transcript of Sentencing, 10/21/2016 at 5 ("[Defendant], to his credit though, accepted responsibility. … [He] realize[d] that it was time to accept responsibility and that of course avoided the time and expense of a trial but more importantly, I think, Your Honor, it avoided putting that minor through the agony of a trial[.]"). Therefore, Defendant cannot demonstrate prejudice and the ineffectiveness claim must fail.

### Ground Seven

Next, Defendant claims the "federal definition of a minor is a person under the age of 16." Motion at 15. Here, Defendant observes, "the person was not under the age of 16." *Id.* Defendant maintains his counsel was ineffective for failing to advance that argument.

The statute in question criminalizes trafficking a person who "has not attained the age of 18 years[.]" 18 U.S.C. § 1591(a). Consequently, Defendant's argument lacks merit, and counsel cannot be ineffective for omitting a meritless argument.

### Ground Eight

Next, Defendant explains the Government contends it has hotel records relevant to the case, but the Government never provided a "copy of the administrative subpoena or search warrant that was used to obtain these records." Motion at 16. According to Defendant, "[l]aw enforcement must have either an administrative subpoena or search warrant to obtain hotel/motel records. If law enforcement fails to

17

obtain one, than it becomes an illegal search and seizure[.]" *Id.* Defendant faults his counsel for failing to argue this issue.

Defendant cannot demonstrate prejudice with this claim. As the Government observes, Defendant "fails to recognize that records can be lawfully obtained by simply asking for them." Government's Response at 17. There is nothing to indicate the Government illegally obtained the records, and therefore it is mere speculation that there would be any basis for suppressing the records.

Even if the records were illegally obtained such that Defendant could have suppressed them, he still cannot show prejudice. Although the Government's factual basis mentions motel business records, there was other evidence sufficient to support the plea. Finally, for the reasons given above in connection with Ground Six (relating to his voluntary and strategic guilty plea), Defendant cannot successfully argue that counsel was ineffective for failing to oppose this evidence that would have been introduced at trial.

### Ground Nine

Next, Defendant maintains his counsel was ineffective for failing to seek suppression of (1) a statement Defendant made to law enforcement and (2) a signed handwritten consent document. *See* Motion at 18.[5] Defendant claims both were obtained while FBI agents questioned him for approximately four hours. During that time, Defendant alleges the agents "had his vehicle blocked in" and had "confiscated

---

[5]    It appears Defendant is referring to the document providing consent to search his cell phone. *See* Government's Response, Appendix A at 4 (Dkt. 98-1).

his car keys and wallet[,]" only allowing him "to leave once he 'confessed' [and] signed a handwritten consent to search document[.]"  *Id.*

Initially, as noted above, the factual basis for the Governments plea did not include any information from the search of the vehicle or the cell phone.  *See* Transcript of Guilty Plea, 3/31/2026, at 22–25.  Accordingly, Defendant cannot show prejudice stemming from the cell phone search.

Additionally, as previously explained, Defendant's counsel acknowledged at the plea hearing that Defendant had "always had some issues with his statement, whether or not it was obtained voluntarily and through Miranda[,]" but further explained Defendant also understood that "even if the statement was suppressed for some reason that all of the other factual—all the other evidence set forth on the government's factual basis would still be presented at trial."  Transcript of Guilty Plea, 3/31/2026, at 21.  Defendant then accepted the Government's factual recitation as set forth in the Government's change of plea memorandum, and the Court clarified Defendant was waiving his right to challenge the admission of the statement:

> You're saying that the—you feel that you could conceivably have an issue to—with the statement that was made.  You could file a motion to suppress but you are giving up and waiving your right to do that because you want to plead guilty and because the facts in the plea memorandum which the government is going to recite to me in a few minutes, are accurate and support the fact that you committed this crime?

*Id.*  Defendant again replied, "Yes."  *Id.*  Defendant also clearly expressed his satisfaction with counsel at the same hearing.  *See supra* at 4–7.

Against this background, Defendant cannot satisfy the *Strickland* standard for ineffectiveness.  First, counsel's performance was not deficient.  He raised the issue

before the Court and ensured Defendant understood that foregoing a motion to suppress was a tradeoff inherent in a guilty plea. This was a "reasonable strategic decision[]" to which courts should be "highly deferential[.]" *Marshall*, 307 F.3d at 85 (citation omitted). Second, given the abundance of other evidence in this case, Defendant cannot demonstrate prejudice resulting from his statement.

### Ground Ten

Next, Defendant explains the Government contends another individual "traveled from his home in Pennsylvania to New Jersey on at least four different occasions, paid the complainant for sex, took her back to his home in [Pennsylvania], knowing she was a 16 year old runaway[, did not] contact authorities, but he kept her at his house for sexual purposes." Motion at 19. Despite this individual's conduct, Defendant asserts the Government did not prosecute the individual for any federal crime. Defendant observes the individual received an approximately 24-month sentence following a state prosecution, while Defendant received 168 months. According to Defendant, that other individual "violated 18 U.S.C. [§] 1591 and the government gave him special treatment." *Id.* Defendant insists his counsel was ineffective for failing to argue this issue.

"United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation omitted). The "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Id.* (citation and quotation marks

20

omitted).   Prosecutorial discretion is "an integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors." *United States v. LaBonte*, 520 U.S. 751, 762 (1997) (citations omitted).

Here, there is no indication—let alone any clear evidence—that the exercise of prosecutorial discretion was based on any improper factor.   Because the argument would have been meritless, Defendant cannot demonstrate he was prejudiced by counsel's failure to make it.

### Ground Eleven

Next, Defendant recounts two statements made by his counsel at the sentencing hearing.   Defendant avers counsel stated, "As for me being a defense lawyer, it[']s hard to have to examine a minor witness[,]" and, "I would be loathe to ever cross examine the complaining witness."   Motion at 20.   Defendant maintains these statements "now become prejudicial to the defendant" and "make it difficult for any reasonable person to believe that [counsel] has his client's best interest at heart[.]"   *Id.*   Defendant also contends counsel ignored Defendant's phone calls, emails, and letters.

In context, it is clear counsel made the statements as a part of an argument for leniency in sentencing:

> [Defendant], to his credit though, accepted responsibility. … [H]e did then look at the situation and realize that it was time to accept responsibility and that of course avoided the time and expense of a trial but more importantly, I think, Your Honor, it avoided putting that minor through the agony of a trial and I think even [the prosecutor] would agree that that is a factor that should be taken into account because that is, having had other cases of a similar nature with [the prosecutor's] office and with [the prosecutor] herself, is my perception that that's

21

probably the hardest part of the trial for, obviously, the witness and frankly for the government. And for me as a defense lawyer, it's hard to have to examine a minor witness. But none of that occurred because [Defendant] accepted responsibility.

Transcript of Sentencing, 10/21/2016, at 5–6.

Similarly, immediately after reemphasizing Defendant's acceptance of responsibility, counsel continued:

With regard to and I certainly am—I would be loathe to even cross examine the complaining witness, the victim, if she showed up and I take everything [the prosecutor] said by way of proffer as fact. But— and this is not—this is not a defense, this is simply to offer both sides— two sides of the story. It is true that a john did take this particular juvenile victim from the Bel Air Motel but it is also true, Your Honor, that this—I think the man's name was Matt. … But that the juvenile 16-year-old young lady maintained a relationship, a physical, sexual relationship that she told Officer Maxwell was consensual for some time. My recollection is a month. It doesn't —I'm not—that is not an attack on this victim. That's a—I just don't want the court left with the impression that this, you know, this john whisked her away to law enforcement. This individual apparently took this juvenile and had sex with her for a month and then she eventually was reunited with her parents. I don't know if he was charged or not. And again, it doesn't really mean a whole lot with regard to [Defendant]. The points I just want to hammer on are he pled guilty, extremely atypical. It was a short window of time. Very unusual. It was one girl, very unusual. And I think that should be taken into account in fashioning the sentence.

*Id.* at 16.

Taken as a whole, it is evident that counsel's choice of words was a reasonable strategic decision calculated to secure a less severe sentence. Accordingly, the statements do not constitute the sort of deficient performance that would amount to ineffective assistance of counsel.

As for Defendant's claim that counsel was not responsive to communications, it is first worth noting that Defendant did not mention any dissatisfaction with

counsel while allocuting at sentencing.  Additionally, Defendant has not raised any meritorious issue with his sentencing.  Therefore, he is unable to establish any prejudice from counsel's alleged failure to promptly communicate.

### Ground Twelve

Next, Defendant alleges he "instructed defense counsel numerous times via email to object, challenge information that was stated in the [pre-sentence report]." Motion at 22.  Defendant asserts that some of the information in the report was "misleading or just not factual" and that counsel failed to discuss the report with Defendant.  *Id.*

As with the preceding issue, Defendant has not identified any meritorious challenge to his sentence.  Accordingly, any objections would be unsuccessful, and Defendant cannot demonstrate prejudice.

### Ground Thirteen

Next, Defendant argues he should not have to register as a sex offender because the "person that was involved [in this case] was not a minor or a child.  The federal definition of a minor is a person under the age of 16," and the victim here was not under 16.  Motion at 24.  Defendant insists that Sex Offender Registration and Notification Act (SORNA)[6] registration is "intended for people who commit[] sex crimes against children[,]" and that he should consequently "not have to register as a sex offender[.]"  *Id.*  Defendant avers his counsel was ineffective for not challenging this requirement.

---

[6]    34 U.S.C. §§ 20901–20962.

This argument does not have merit. SORNA defines "sex offender" as "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). The term "sex offense" includes "a Federal offense … under section 1591 … of Title 18[.]" 34 U.S.C. § 20911(5)(A)(iii). Defendant pleaded guilty to a violation of 18 U.S.C. § 1591, meaning SORNA's application is appropriate. Because counsel cannot be ineffective for failing to raise a meritless argument, Defendant's claim fails.

**Ground Fourteen**

Next, Defendant states that "[a]s a stipulation of [his] release, the Court order[ed] that he forfeit his Fourth Amendment right and allow the Government to rummage through his papers, property and effects at any time they may wish." Motion at 26. Defendant argues this is unconstitutional, and his counsel was ineffective for failing to contest it.

It appears Defendant is referencing an additional term of his supervised release that specifies:

> The defendant shall submit to an initial inspection by the U.S. Probation Office and to any examinations during supervision of the defendant's computer and any devices, programs, or application. The defendant shall allow the installation of any hardware or software systems which monitor or filter computer use. The defendant shall abide by the standard conditions of computer monitoring and filtering that will be approved by this Court. The defendant is to pay the cost of the computer monitoring not to exceed the monthly contractual rate, in accordance with the probation officer's discretion.

Judgement in a Criminal Case at 5 (Dkt. 60).

"Defendants on supervised release enjoy less freedom than those who have finished serving their sentences." *United States v. Holena*, 906 F.3d 288, 295 (3d Cir.

24

2018) (citations omitted).  Consequently, Defendant has a "reduced expectation of privacy" upon release.  *United States v. Sczubelek*, 402 F.3d 175, 187 (3d Cir. 2005).  Indeed, a "condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment."  *Samson v. California*, 547 U.S. 843, 847 (2006).  Of course, as previously explained, for special conditions of supervised release to be lawful, they must involve "no greater deprivation of liberty than is reasonably necessary" to promote deterrence, protection of the public, and rehabilitation of the defendant.  18 U.S.C. § 3583(d)(2); *United States v. Santos Diaz*, 66 F.4th 435, 448 (3d Cir. 2023) (Supervised release conditions "will be upheld if (1) they are directly related to deterring defendant and protecting the public and (2) are narrowly tailored.").

Courts have upheld computer monitoring conditions in the past, so long as they are appropriately tailored.  *See, e.g.*, *United States v. Miller*, 594 F.3d 172, 188 (3d Cir. 2010);[7] *United States v. Hall*, No. 24-1303, 2025 WL 227688, at *3 (3d Cir. Jan. 17, 2025) (upholding a supervised release computer monitoring condition).

Here, the conditions were directly related to deterring Defendant and protecting the public, and were narrowly tailored.  Defendant used the internet to recruit a minor to engage in prostitution and then advertised the minor for purposes

---

[7]    In *Miller*, the Third Circuit held a child pornography offender's lifetime term of supervised release that significantly limited internet access was overbroad.  Yet the Court also explained that "[o]n remand, the District Court may impose a restriction on [the defendant's] computer use and internet access and may require computer monitoring, but any such conditions must be appropriately tailored and in accordance with 18 U.S.C. § 3583(d)(2)."  *Id.* at 188.

of prostitution, again *via* the internet. Accordingly, monitoring Defendant's internet activity upon release is reasonably related to both the protection of the public and deterring Defendant from engaging in similar conduct in the future. Moreover, the condition is narrow. This is not a complete ban on internet use, but instead merely requires monitoring, filtering, and inspection. Because any challenge to this condition would have been meritless, Defendant's counsel cannot be ineffective for failing to raise the issue.

### **Ground Fifteen**

Finally, Defendant argues it was improper to charge him as being part of a "venture," because he "was the only person charged and convicted." Motion at 27. Defendant also posits he could not have known the victim's age because she lied about her age on the website. *See id.* Defendant insists counsel's failure to challenge this made counsel ineffective.

In relevant part, the statute in question states:

**(a)** Whoever knowingly--

> **(1)** in or affecting interstate or foreign commerce … recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; **or**
>
> **(2)** benefits, financially or by receiving anything of value, **from participation in a venture** which has engaged in an act described in violation of paragraph (1),

knowing, or in reckless disregard of the fact, that … the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

26

18 U.S.C. § 1591 (effective December 23, 2008, to May 28, 2015) (emphases added). As in Ground Four, the word "or" is significant here. While being a part of a venture is one way to violate the statute, it is not the only way. Here, there was sufficient evidence to prove Defendant recruited, enticed, harbored, transported, provided, and maintained the victim. Therefore, the statutory requirements were more than satisfied. *See United States v. Niederberger*, 580 F.2d 63, 68 (3d Cir. 1978) ("[G]uilt may be established by proof of any one act named disjunctively in the statute."). Consequently, any objection from counsel on this point would have been meritless and thus cannot serve as the basis for a successful ineffectiveness claim.

To conclude, Defendant again raises the argument that he had reason to believe the victim was over 18. His related ineffectiveness claim must fail for the same reasons given above for Ground Six.

### Certificate of Appealability

"At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue." 3d Cir. L.A.R. 22.2 (2011). Without a certificate of appealability, "an appeal may not be taken to the court of appeals from … the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Defendant can "satisf[y] this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Defendant has not made that showing here. Accordingly, the Court declines to issue a certificate of appealability.

### III. CONCLUSION

For the foregoing reasons, the Motion is without merit and will therefore be denied.  An appropriate order follows.

DATED: April 21, 2026

BY THE COURT:

_____
GAIL WEILHEIMER          J.